Case number 25-1089, Steve Kariskin v. David Shaver, or arguments not to exceed 15 minutes per side. Mr. Murphy, you may proceed. Good morning, Mr. Murphy, or afternoon, Mr. Murphy. Good afternoon, your honors, and may it please the court. Adam Murphy with NYU Law School's Federal Appellate Clinic. On behalf of the appellant, Steve Karakson, it is my great privilege to introduce Bailey Lindsay and Miles Pulsford, two terrific law students and soon-to-be law graduates who will be presenting argument this morning under our supervision. Well, thank you very much, and thanks for bringing them. We're always appreciative of the clinic being here. Thank you. Good afternoon, your honors. May it please the court, Bailey Lindsay appearing on behalf of Petitioner Steve Karikson, who is in the courtroom today. I would like to reserve five minutes for rebuttal. That sounds great. Thank you. When asked whether he wished to waive his right to counsel during jury selection, Mr. Karikson responded with silence. The record thereafter is clear. Mr. Karikson would take the lunch break to make a, quote, final decision about self-representation. But the trial court never followed up on that open question, and certainly should have, especially since Mr. Karikson consistently referred to Mr. Winters as, quote, my attorney both before and after the lunch break. At best, the record demonstrates that Mr. Karikson expressed equivocal interest in self-representation. To this, your court of appeals' decision to the contrary was unreasonable under 2254 D1, especially given the strong presumption against waiver established by Johnson v. Zerbst. Can I ask you a quick question, which is I'm just curious. This is kind of an overview question rather than in the weeds. Of course. It seems interesting to me that you're still challenging the conviction because he served his full time. Is there a risk, I'm curious, that you win the battle and lose the war in the sense that, let's say, you win this case, and we send it back to state court and they prosecute him again? He could get more jail time. Am I missing something? No, your honor, you're not missing anything. We've discussed this with Mr. Karikson. And what he's concerned about today is vindicating his rights that he was deprived of in his case originally. And if that means going back to trial, again, he is completely OK to do that. And going back to jail? And going back to jail. I think the facts before us are truly extraordinary. And I think simply, it requires us to be here today to vacate his conviction, regardless of what that result may be on the other side. I'm glad you've talked to him about it. Thank you. Can I ask you, so in the Miranda context, the Supreme Court has said there can be implied waivers. So as long as you read the Miranda warnings, you don't have to get an affirmative, I waive my right to counsel under the Fifth Amendment. Why shouldn't the same rule extend to the Sixth Amendment? So clearly knew, generally, of the right to counsel. The trial court explained the risks involved of holding trial without counsel. But he decided to take those risks anyways, just from his conduct. So in the Miranda context, talking is an implied waiver. I would say that there's an implied waiver of counsel after you're told about it, and you decide to represent yourself. Your Honor, a couple of points on that. First is that counsel is, I mean, the constitutional right that protects all other constitutional rights. It is very serious. And that's why Johnson and his progeny discuss it the way that it does. And that's why Baumolke and Ferreira require more than just simply a trial court deciding that somebody has waived by conduct without knowing anything else at all. It requires that these waivers be knowing, intelligent, voluntary, and unequivocal. And so simply taking silence or taking waiver by conduct is not just here, where there's a strong presumption against the finding of a waiver against a constitutional right. What about when, to follow up on that, on the knowledge itself when he says, go to lunch break, talk about it with your attorney, and then let me know, basically. And then he says nothing after the lunch break. Can they imply from that a waiver or no? Or no knowledge at the very least? No, Your Honor. Once again, I have a couple of points on that. Mr. Kerriksen, whenever he returned from the lunch break, continued to refer to Mr. Winters as my attorney, which reflects that Mr. Kerriksen, if there was, if you were. But he was his standby attorney, right? He was. Mr. Winters announced himself a standby attorney. But if you look at the context in which Mr. Kerriksen refers to Mr. Winters as his attorney, it does not reflect that same understanding. Mr. Kerriksen asks, before lunch break, can I have time to talk to my attorney about this? And after says, I need help with my case, Your Honor. I'm not getting it. My attorney is not helping with my case. Which is not something you would say about standby counsel. It's about something you would say about somebody who you believe, in that moment, to be your attorney. So when was the first point in the trial when Mr. Kerriksen did represent himself? Jury selection, Your Honor. Why isn't that act alone sufficient to show that he's waived? I mean, he didn't have to get up and do anything, did he? If you look at the trial transcript, Your Honor, and as, I mean, in the words of the district court whenever they were viewing this, the trial court never gave Mr. Kerriksen the choice of what was going to happen. And the trial court says, well, I think we're all stuck with one another, let's bring in the jury. And as the district court qualified that statement, in the language of a judge, the time to talk is over. And throughout that entire colloquy that happened after the lunch recess, Mr. Kerriksen was consistently cut off whenever Mr. Winters himself attempted to take responsibility for, or to explain a little bit more about the work he had or had not done. But if he had the option, he could have asked Mr. Winters to do the plagiar. Couldn't he have? I mean, I think even there, the point is, Your Honor, is that the trial court did not even ask Mr. Kerriksen himself what the choice he wanted to make was. Well, it seems like he makes the choice by getting up and doing it himself instead of having Mr. Winters do it. But Your Honor, once again, I think I just want to emphasize that even he still failed, the trial court failed to conduct any of the investigation that's required by Ferretta and Von Mulkey. That is required to establish on the record whether somebody is knowingly, intelligently, and voluntarily waiving those rights. What are you saying the court should have done differently in terms of asking questions? What else should the court have asked? Well, I mean, the first question, Your Honor, I think that should have been asked is, are you waiving your right to counsel during jury selection? The trial court didn't even ask that, which is a pretty big oversight. It didn't ask whether he wanted to keep Mr. Winters as attorney. It didn't ask why he wanted a new attorney. He did not even ask, because he could not make, ask, sorry, he did not even find on the record that he was waived. Wasn't the first thing the court was told, I know this was a new judge, the first thing he was told is that, by Mr. Winters, is that Mr. Kerikson wanted to represent himself. This explicit wording, Your Honor, is that Mr. Kerikson had, quote, some interest in representing himself. And then I thought he responded when he asked him, he said, at this time, I do, or something to that effect. And then he gave him the warning. I think you guys, your brief, I'm sorry, refers to it as the 217-word warning, or whatever it was, about the life sentence, the rules, all the things that you would think of as part of the Ferretta inquiry. Correct. And then, but the Ferretta inquiry, importantly, isn't just those brief admonishments. When the trial court was confronted with somebody who he did not know, who had been proceeding with counsel for months, he didn't even ask a single question, and specifically why he was suddenly interested, and equivocally interested in self-representation at all. And once the trial court asked clearly for the very first time whether Mr. Kerikson wanted to waive his right to counsel during jury selection, Mr. Kerikson is silent, which cuts against any idea that there was any waiver in the first place, and continues to refer to, as I've mentioned before, Mr. Winters as my attorney. In isolation, or as Judge Murphy pointed out at the beginning, do we look at the entirety of the record, in other words, to make this determination, including the before and after lunch? In other words, before lunch, he says, go talk to your attorney, figure it out. And afterwards, when he doesn't respond, the yeah, I want who he's calling, my attorney, my attorney to do voir dire. And he gets up and does voir dire, as Judge Bush pointed out. Isn't that enough for when you look at the record as a whole to conclude there's a waiver? No, Your Honor. I think the cases the government cites in this brief for this principle that people can waive their constitutional right of counsel by conduct kind of demonstrate exactly how extraordinary this case is. As I mentioned before, and as you mentioned, the trial court was completely unfamiliar with Mr. Kerikson. Does Mr. Kerikson make any contention that Mr. Winters was incompetent as counsel? We specifically don't believe that we have to establish that, because as this court established in James, by reading Tovar and Fretta and Baumolke, the correct analysis is preparedness. But we do say in our briefing that if there is a difference between being unprepared and being ineffective, then Mr. Winters was both. So what exactly, what made Mr. Winters unprepared? Which actually gets us back into the intelligence and knowing part of our argument. But on the last day of trial, the trial court asked Mr. Winters what work he had or had not done on the case. And Mr. Winters himself, I can direct you to the pages. That is page ID 998 through 991. Mr. Winters admits that he did not even attempt to call a single alibi witness that Mr. Kerikson gave him. He did not direct the investigator to make those calls, which is remarkable. It's remarkable that an attorney was given a list of alibi witnesses, and he didn't even pick up the phone or direct somebody to do so. And that is not the conduct of a prepared attorney. But once again, moving back into the knowing and intelligence aspect of it, the trial court did not even bother to ask Mr. Winters what work he had or had not done on the case until the jury was literally deliberating. And so by refusing to ask any questions at all, the trial court completely abstigated its protective role that it was required to inhabit that was established in Von Mulcahy and Ferretta. I see your time is up, but hold on. Let me ask my, do you have any further questions? Do you have any? Do you want to end with a quick conclusion? Yes, for the reasons stated here and in our briefing, we ask this court to grant writ. Thank you so much. Thank you very much. You may proceed. Good afternoon, Your Honors. Assistant Attorney General Scott Shimkus appearing for respondent. Your Honors, because this is a habeas case, our conversation really has to start with AEDPA. So here, the Michigan Court of Appeals accurately understood Mr. Carrickson's claim, cited and applied the relevant legal standards, and held that the trial court abided by them when he affirmed that he wanted to represent himself and refused the services of his second appointed counsel. On the morning of trial, in particular. And that was a merits determination. So AEDPA applies, and that's what has to govern this case. And so then the question becomes whether- Ferretta on the other side points out that it has to be a penetrating and comprehensive examination. Where is that in the record? So that language comes from Von Mulcahy, which I believe was a 1958 case, if I remember correctly. So that predates Ferretta. And not that that necessarily means it's completely inapplicable, but Ferretta is really the governing standard when we're talking about waiving counsel. And Ferretta didn't use that language in its opinion. It used the language that all that has to happen is the defendant has to be told of the dangers and disadvantages of self-representation, and that they have to go into this decision eyes wide open. Essentially that they have to- It seems to me there were different times where Mr. Carrickson was hemming and hawing. So can you really say that's a waiver? In other words, he's saying yes at this time, he's silent. How can we look at the record and say the Ferretta inquiry was done and he clearly waived his right? So, Your Honor, I think it depends on the context we're looking in, because you can waive your right to counsel and therefore invoke your right to self-representation in two ways. You can do it by your words, or you can do it by your conduct. There's the body of law that we cited in our brief, and frankly, even the law cited in the other side's brief, tells us that those are the two ways you can waive your right to an attorney. If you do it by your words, then yes, there needs to be this Ferretta inquiry. But we have cases such as Pittman and Green where you can waive by your conduct. Even, for instance, in King v. Bobby, there the defendant, or the petitioner, I suppose, because that was a habeas case, he specifically disclaimed that he wanted to represent himself. But the court said, look, you are refusing to work with your appointed counsel, and if I recall correctly, I think that was several days even before trial. It wasn't necessarily even the day of trial. But the court said, because you're refusing to work with your appointed counsel, your only other option is to either hire your own attorney or to be your own attorney. And so by refusing to work with counsel and refusing to retain counsel, he necessarily chose that third option. That's the same thing that this case from the United States, or excuse me, from the Seventh Circuit said in United States v. Orre. So you can do both, and we have both in this case. We have an unequivocal waiver. As soon as the trial starts, where the trial court says, so I understand you want to represent yourself. He says, yes, I do. And the court says, okay, well, you're this old, you understand you're charged with these things, and you're gonna be held to the same rules. You sure you still want to do that? He says, yes, I do. And so then the court says, okay, so for Voidir, is that what you want to do? And he says, well, can I talk to my attorney? It's in recess, he comes back. And sure, it's true that the trial court does not then ask him, so what was your final decision about Voidir? The fact is then, I think at that point, we're talking about conduct. What about your friends on the other side make the argument that it's a Hobson's choice, because counsel was unprepared, so he was really choosing between himself and no counsel at all? So for Hobson's choice, we're talking about the Pouncey case, right? That's the seminal Hobson's choice case. And that says, there has to be this waiver by Orbs, really, or conduct, and Pouncey, it was both, because again, he also refused to work with his appointed counsel, and in the middle of trial said, I want to represent myself. And then the question becomes, was counsel prepared or unprepared, or competent or incompetent? Because the only way that the choice is unconstitutional is if your attorney can't do his job. Now the cases such as James and Fowler that the other side cites, where counsel was actually unprepared and said he was unprepared. He said, what about the accusations of the cases? What about the part of the record that they point to where it indicates he's unprepared? I would disagree that that indicates he's unprepared. And I think I also want to remind this court that it's their burden to show that he was unprepared. In their reply brief, they point out that we failed to show that he was competent, but that's not our burden. Their burden is to show that he was incompetent. And a few points where counsel says, oh, I didn't talk to these alibi witnesses. I had an investigator, he looked at everything. Yes, Judge, you're right, he didn't call these alibi witnesses. But I think alibi witnesses is an interesting issue in this case, because Mr. Carrickson provided two alibis through the course of this case, where first he told the insurance investigator and the police that he was in Kentucky when his house was burning down. But by the time of trial, he knew his cell phone contradicted that. So instead he said, well, nevermind, I actually was in Michigan, but I wasn't lined up. So maybe his counsel knew that he had these two sort of contradictory alibis. And even if they had someone who said he was in a certain place, he's still going to be challenged with the fact that he provided two alibis, one of which had to be false because they couldn't both be true. And so counsel very well may have known those things and said, we can't do an alibi defense here. And maybe that's one of the points of contention that he had with counsel. He said, I want an alibi defense, and counsel said, we can't do that because the evidence here is gonna make that look really bad. And Richter tells us that we have to indulge every presumption. Do you think if the record is ambiguous on whether the waiver was knowing that the state should lose? No, especially if we're talking about by words, as long as you have that minimum forerunner inquiry, which here, I really think we do because we had this warning of- Can you step back? What do you mean by words? So when he says, yes, I want to represent, as opposed to his conduct where he's simply refusing to work with his appointed counsel. If you have the refusal to work with appointed counsel, you don't need, the cases here say that you need a minimum forerunner inquiry. And so at the very worst, what we have here is a minimum forerunner inquiry, but I would argue that we actually have a- So your point is that the record, under forerunner, the record need not establish a knowing waiver, it only needs to establish that the trial court stated the disclaimers? Well, that's what makes it knowing involuntary is that the defendant knows what he's up against, what he's facing in terms of charges, penalties, and the rules he'll have to follow. As long as he knows those things, and then he says, yes, I still want to do it, then we have a knowing involuntary waiver. So that would suggest to me, your hypo, it's unambiguous, but here, we have a yes, we want to do it, but then we kind of have a taking it back, and we have uncertainty. And so the question in my mind is what do we do with a record like that, where maybe there's evidentiary points going both ways on whether it's knowing? Like who should lose in that scenario? So I think then, in that case, it's the petitioner who should lose because of these cases that we've cited in our brief, such as Pouncey, King, Aikens, Pittman, Green, Coles, Orie, all those- They stand for the proposition that if the record of the state trial is ambiguous, that the habeas petitioner should lose? So not that it's, when it's ambiguous. When we're talking about a situation like we have here, where it's, he uses his words, and then, yeah, maybe he muggies the water, he tries to claw back that unequivocal waiver of counsel, where here, he comes back from the break, and he says, well, actually, I want new counsel. What those cases say is when you have both of those situations, the conduct is essentially what controls, that he demonstrates his desire to represent himself. But aren't you saying, in essence, that the conduct cleared up the ambiguity? In other words, what you're saying is if the words demonstrate an ambiguity, you can look to the conduct to clear up the ambiguity. Yet, if we conclude the record as a whole, I'm sorry. No, in that case- What if we conclude the record as a whole is ambiguous? Then what? In other words, don't give me, in response, I'm now mangling Judge Murphy's question, but I don't want, okay, yes, we win, here's why it's not ambiguous. I want, what do we do if we conclude, in spite of your arguments, that the record is ambiguous? If you would conclude that it is, in fact, ambiguous on the entire record, despite his multiple statements that he wants to represent himself, if that was your conclusion, then yeah, I think we would be in a situation where maybe at least you've pierced AEDPA, and now you're in de novo, but that doesn't necessarily would mean we lose, I don't think. Do you think, so what if the, are you allowed to introduce extraneous evidence to show that he quite clearly knew? Is it limited to the record? I apologize for answering your question with a question, Judge, but could you clarify what you mean by extraneous? In other contexts, sometimes in habeas, you can introduce extrinsic evidence to the record. His attorney told him quite clearly that it was a bad idea to go it alone, and so his attorney effectively made it knowing. I think that could happen if the review ended up being de novo, but when we're still under AEDPA, the record is essentially closed, so we're sort of stuck with whatever happened in the state court, that's our record. But if AEDPA were to be pierced and say a hearing was held in the federal district court below that, this court remanded for a hearing. One question is usually on habeas, the petitioner has the burden of showing, the burden of proof, so it would be the burden of showing that it was in fact unknowing. Correct. So one theory of ambiguity would be the petitioner has not met the burden on habeas, because if it's, in order to get relief, shouldn't it affirmatively have to show that it was in fact an unknowing waiver? Exactly, your honor, yes, that is their burden to show. That gets both, Pouncey tells us, that is their burden to show that it's both an involuntary waiver, if we're talking about Hobson's Choice, and that counsel was in fact incompetent. That is their burden to show, and what do you, our case law is somewhat confused on whether, so on the question of voluntariness, we treat it as de novo, so we treat it as a question of law, whether something was voluntary, but our case law is unclear, and other circuits suggest it might be a question of fact, whether something was knowing, which would make some sense to me, because it's about a person's state of mind, which is more a historical fact. Do you think it should be subject to D-1, 2254-D-1, the legal part of AEDPA, or should it be subject to the D-2 factual part of AEDPA for whether something was knowing? So I'd say I have sort of a two-pronged response to that. So the first is, if you want to look at, by analogy, when you have a knowing and voluntary entry of a guilty plea, habeas courts, including this court, treat a state court's finding that, yes, I find this plea to be entered knowingly, intelligently, voluntarily, that is a determination of fact that is entitled to deference under 2254-E-1, and so it certainly could be viewed similarly here if you have a state court finding that that could be a factual determination that is entitled to deference under E-1, and therefore could fall under, that D-2 would have to be satisfied in order to get around. You've kind of argued this case under D-1, though. So I would query, I mean, this may be just a preservation point that it's unclear whether this should, in fact, be under the legal standard versus the factual standard. Well, if I may, I don't think I'm necessarily claiming here that this is a D-2 inquiry, because as Your Honor pointed out, really all the body of law here seems to say that this is a legal inquiry that falls under D-1, or perhaps at best, not that any cases say this, but you could conceive of it this way, that it's a mixed question, and there is clear case law that mixed questions fall under D-1, not D-2. So I wouldn't say we're making a D-2 argument that we haven't preserved here, and really the comparison to a guilty plea context is truly that for comparison, but I don't think we have any cases that say it is a factual determination that's subject to E-1 and D-2. But I understand Your Honor's point. Well, it would be a legal question if the record had to show, so why don't we read Feretta? I view Feretta as somewhat unclear, but you could read Feretta like Boykin. So Boykin versus Alabama says for guilty pleas, you actually have to have an express waiver on the record that can be reviewed in habeas. Feretta says on the record, but it doesn't really say. Why shouldn't we interpret it like Boykin to suggest you do have to have this type of express waiver because it's such an important right? Well, I think for one thing, that hasn't necessarily been argued here by the other side, that it has to be akin to Boykin. But at least for this case, I would argue there is a record to review because I think that the concern in Boykin, if I recall that case correctly, forgive me for not being that, since we haven't briefed it. But I believe the point was, in that case, there was literally no record, that the defending had entered a plea and there was no transcript or something along those lines. But the court, my only point was the court has since established the rule that when you plead guilty, the knowingness part of it, not only has to be subjectively knowing, but it has to be shown on the record of the trial court proceedings. And so we could interpret Feretta in the same way to make his subjective knowledge maybe less relevant than what actually the objective record shows as to his knowledge. Sure, and if that's the way this court would look at it, then I would argue that's been satisfied here because we have a very sufficient record. Not only do we have him unequivocally at the start of the trial saying, yes, I want to represent myself, then at least three points throughout the trial, he says, again, yes, I want to do this. And if he doesn't say it, he just gets up and does it. And so whether it's by words or by conduct, there was waiver here. This was not an unconstitutional Hobson's choice because counsel was competent and prepared. And the other side is not shown otherwise. In fact, because they also have an asserted ineffective assistance of counsel as the district court pointed out, that that really cuts against their claim as well. Maybe not dispositive, but it certainly cuts against it. Okay, your time is up. I'm sorry, I thought I saw zero in seconds. I apologize, your honors. That's all right, you get one sentence if you want it. Just, we ask that you affirm. Thank you. Thank you. Apologies again.  You may proceed. Good afternoon, your honors. May it please the court. Myles Pulsford appearing on behalf of petitioner Steve Carrickson for rebuttal. And just before I get started, I want to say what an honor it is to be here in this courtroom and practicing as a student. And what an honor and a pleasure it's been to work with you. Well, we're lucky to have you. Thank you. So the government cites a lot of cases as they point to on the subject of implied waiver. And I think those cases are extremely instructive about how we should think about implied waiver. Which is to say that this is a waiver of a fundamental constitutional right and one that also protects other constitutional rights. And we must take very seriously if a court is gonna find that a defendant who did not ask directly and unequivocally with his words has still somehow waived that right. And in those cases, I think we have King, we have Green, we have Coles, Pittman, all the cases the government points to, we see this court seeing where that line should be drawn. Those are cases in which trial courts watched defendants go through up to five attorneys. And those trial courts were willing to hold dedicated hearings on the question of what was going on and why this defendant kept asking for counsel after counsel. So in some of those cases, I believe the courts delayed trial for up to two years to really get to the bottom of the question. And only after having a front row seat to all of those proceedings, asking again and again, in some cases, warning that this next counsel would be the last counsel and after that there would be no more counsel. How many counsel do you need to go through, do you think, before a district court can say enough is enough? I'm not sure. This court has certainly not set a specific number. I'm not sure that would be too many and I'm not sure that we're here to propose a specific rule on number of attorneys. I think the question is, again, has the trial court discharged its protective role? Has it really looked into the circumstances? Has it, is it doing everything it can to figure out what's going on and to figure out if there's some way that, if there's some other reason. What about the combination that the Supreme Court's been pretty clear, you just get counsel, not counsel of your choosing. This is a second counsel and it's on the eve of trial. What do we do with all that? We've got case law saying eve of trial going both ways, right? Feretta, non-feretta. That you don't get new counsel on the eve of trial. Timeliness is important. And the second thing is, is you don't get counsel of your choosing and why isn't that enough for us to say, or the trial court to say, that doesn't fly. And remember the standard, as your friend on the other side pointed out, is could any reasonable jurist find this is enough? So, it's not that Mr. Carrickson wanted a counsel of his choosing. He simply wanted counsel who would do something to investigate his case or prepare for trial. I also think it's important to point out that the government says that to get to a voluntariness question, we need to have a waiver on the record. And Mr. Carrickson did not waive his right to counsel after the trial court unreasonably told him that he had to choose between Mr. Winters and no attorney at all. The record shows very clearly that Mr. Carrickson did not get to respond to that question and that the trial court just sort of rushed ahead in an attempt to get things over with. So, we simply don't have the unequivocal knowing and intelligent waiver on the record that we need to find that there was a waiver here to even bring us to the question of whether that. But the question really is, could any reasonable jurist conclude that the combination of his words and conduct is enough?  I mean, yeah, EDPA imposes a high bar for certain. I think that here, under the objective EDPA standard, it's not reasonable to conclude, or I guess to phrase it another way, we have clear Supreme Court precedent on how to look at these things. That's what we get from Ferretta, from Von Moltke, and from Johnson. And the Michigan Court of Appeals is applying those cases and applies them completely unreasonably. Can I ask you about Von Moltke? Because isn't that a plurality and doesn't it undermarks the concurrence control which says nothing about it? I'm not sure exactly what we should take away from that, but I think we can look to some of this court's other cases on exactly how to read the interplay of these cases in the waiver of the right to counsel context. Which also brings me to another point I'd like to respond to the government on, which is, if this court finds that this is an ambiguous record, we know exactly what needs to happen, which is that the state has to lose here. Established Supreme Court precedent, again, Ferretta, Von Moltke, and Johnson, tell us what needs to happen with ambiguous records. Johnson tells us every reasonable presumption has to be indulged against finding this waiver. That is simply not what we see in the Michigan Court of Appeals decision, which handled this whole question in three rushed paragraphs and ignored huge parts of the record. We also see this court's own precedent telling us exactly what to do with an ambiguous record. I see my time is up. You can wrap up, but let me check first if, do you have any, feel free to wrap up. Finishing up just that one answer. Fowler tells us, Fowler is an AEDPA case that found an unreasonable application of these exact same cases. And that was because the record was ambiguous and this court determined that it was not permitted to read into the record or to go outside of the record to assume or make presumptions about what should have happened. Ambiguous record here means that Mr. Kerickson must win and the district court must be reversed. Thank you very much, counsel. I want to thank both the clinic and the state of Michigan for excellent arguments and briefs. We really appreciate you putting in all the time, both on Michigan's behalf and Mr. Kerickson's behalf. This was very well argued and we are greatly appreciative of the NYU clinic taking the time to come out and argue this case. Thank you all.